## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**United States of America,**

       **Plaintiff,**

**v.**                                            **Case No. 07-20168-13-JWL**
                                                  **Civil Case No:  12-2382-JWL**

**Harold Wallace,**

       **Defendant.**

### MEMORANDUM & ORDER

On February 1, 2008, Harold Wallace was charged in a Superseding Indictment with conspiracy to manufacture, to possess with intent to distribute, and to distribute 50 grams or more of cocaine base and to possess with intent to distribute and to distribute five kilograms or more of cocaine between January 2006 and November 27, 2007 (Count 1); and attempted possession with intent to distribute cocaine on August 24, 2007 (Count 13). Twenty-three other individuals were also charged in the 39-count Superseding Indictment. One week prior to the start of trial, Mr. Wallace indicated to the court that he had decided to enter a guilty plea without the benefit of a written plea agreement. On April 1, 2009, Mr. Wallace entered a plea of guilty to both counts.

A presentence investigation report (PSIR) was prepared in August 2009 and was revised on October 23, 2009 and again on February 1, 2010. The amended PSR calculated Mr. Wallace's base offense level at 32 based on the quantity of substances involved. The amended PSR calculated a 2-level enhancement based on Mr. Wallace's possession of a firearm in connection with the offense; a 3-level enhancement for role in the offense; and a 2-level

reduction for acceptance of responsibility, for a total offense level of 35. Mr. Wallace's criminal history category was V, resulting in a guidelines range of 262-327 months' imprisonment. Several sentencing issues were in dispute as reflected in the PSR and Mr. Wallace, represented by retained counsel, asserted several objections to the amended PSR. On March 16, 2010, a sentencing hearing was held during which the government presented testimony from two co-defendant witnesses, Ms. Lakela Houff and Mr. Henry Grigsby, as well as the case agent. Mr. Wallace submitted a transcript from a telephone call between Ms. Houff and Mr. Grigsby. After hearing the evidence, a statement by Mr. Wallace, and arguments by counsel, the court sentenced Mr. Wallace to 300 months' imprisonment on Count 1 and 240 months' imprisonment on Count 13, to be served concurrently.

This matter is now before the court on three motions filed by Mr. Wallace—a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 1460); a motion for oral argument and an evidentiary hearing on the § 2255 motion (doc. 1504); and a motion for miscellaneous relief (doc. 1505) asking the court to consider a second supplemental pleading relating to his § 2255 motion. As explained in more detail below, the court denies Mr. Wallace's motion to vacate and denies his request for oral argument and an evidentiary hearing. The court grants Mr. Wallace's motion for miscellaneous relief to the extent that the court has considered the substance of Mr. Wallace's second supplemental pleading in analyzing Mr. Wallace's § 2255 motion but denies that motion to extent the second supplemental pleading seeks any additional relief.

2

**Ineffective Assistance of Counsel Claims**

In his § 2255 motion, Mr. Wallace sets forth seven specific grounds for relief. The court begins its analysis of Mr. Wallace's motion by examining the first four grounds asserted by Mr. Wallace in which he contends that the performance by his trial and appellate attorneys was deficient in violation of his Sixth Amendment right to counsel. "To establish ineffective assistance of counsel, a defendant must show 'that counsel's representation fell below an objective standard of reasonableness' and that he was prejudiced by the deficient performance." *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)).

*Ground One*

Mr. Wallace first contends that his trial counsel's performance was constitutionally deficient because he induced Mr. Wallace to plead guilty and waive his right to a jury trial by promising Mr. Wallace that he would receive "at most" a 10-year sentence and by giving the "impression" that he had no choice except to plead guilty and waive his right to trial. The record, however, contradicts Mr. Wallace's assertions.

At Mr. Wallace's change of plea hearing, the court specifically advised Mr. Wallace that a possible sentence could range from a minimum of 10 years to a maximum of life in prison and Mr. Wallace swore under oath that he understood the sentencing range as explained by the court. The court also explained to Mr. Wallace in some detail how the sentencing process works and that, as a result of this "fairly complicated" process, the court "cannot tell you what your sentence is going to be." Mr. Wallace confirmed under oath that he understood. Finally, the

court advised Mr. Wallace that neither his counsel nor the government "can tell you exactly what your sentence will be" and Mr. Wallace confirmed his knowledge of that fact as well.  He confirmed under oath that no one had made any promise or inducement to get him to plead guilty.

Furthermore, in his plea petition, Mr. Wallace represented to the court that his counsel advised him that a guilty plea would subject Mr. Wallace to a mandatory minimum sentence of 10 years up to a maximum sentence of life in prison.  He further represented in his plea petition his understanding that the sentence he would receive was "solely a matter within the control of the Judge" and that if anyone, including his attorney, had made a promise or prediction regarding his sentence, he understood that that person had "no authority" to do so.   Mr. Wallace's trial counsel, in his certification in the plea petition, certified that he had made no predictions or promises to Mr. Wallace concerning any sentence he might receive except that he had discussed with Mr. Wallace how the sentencing guidelines might apply in his case.  The record, then, flatly contradicts Mr. Wallace's argument that he was induced to plead guilty by his counsel's promise of a lighter sentence.

The record also contradicts Mr. Wallace's contention that his counsel led him to believe that he had no choice but to plead guilty.  During the plea colloquy, Mr. Wallace swore under oath that he understood that he had the right to plead not guilty and that if he did so he was guaranteed the right to a trial by jury.  Counsel for Mr. Wallace also confirmed to the court at the change of plea hearing that he had discussed with his client the "various courses of action" with respect to the case—including entering into a plea agreement; pleading guilty without an agreement; and proceeding to trial.  Mr. Wallace confirmed to the court that his trial counsel in

4

fact had explained those options to him.  Similarly, in his plea petition, Mr. Wallace represented to the court that he knew that he had the right to plead "not guilty" to any offense against him and that he was guaranteed the right to a speedy and public trial by jury and that by pleading guilty he was waiving his right to a jury trial.  Based on the record, then, the court concludes that Mr. Wallace's plea was voluntarily entered into without any impermissible inducement.[1]

*Ground Two*

Mr. Wallace contends that his counsel was constitutionally deficient because he failed to secure from the government and communicate to Mr. Wallace a proposed plea offer.  According to Mr. Wallace, if his counsel had taken reasonable steps to secure a plea offer from the government, then Mr. Wallace would have received a significantly reduced sentence.  The court rejects this argument as the record flatly contradicts it.  During the change of plea hearing, Mr. Wallace's counsel Kevin Dellett explained to the court that he had visited with the government about Mr. Wallace's options, including the possibility of entering into a plea agreement which would require him to cooperate and to waive certain arguments concerning his sentence, the possibility of going to trial and the possibility of pleading guilty without a plea agreement to preserve all of his arguments for appeal purposes.  Mr. Dellett advised the court that he then sat down with Mr. Wallace on the day prior to the change of plea hearing to "explain to him the various options" that he had discussed with the government.  According to Mr. Dellett, Mr.

---

[1] Mr. Wallace also summarily contends that his counsel advised him to plead guilty without adequately investigating the "meager" role played by Mr. Wallace in the conspiracy.  The evidence set forth at the sentencing hearing, however, contradicts Mr. Wallace's assertion that his role in the conspiracy was "meager" despite vigorous cross-examination from Mr. Wallace's trial counsel.

Wallace advised him that he did not wish to pursue a plea agreement if that would require him to cooperate.  Mr. Dellett, who was serving as an advisory, conflict-free counsel to Mr. Wallace in light of a potential conflict of interest held by his retained counsel Harold Rosenthal, also indicated that Mr. Wallace "expressed a lot of confidence in Mr. Rosenthal's abilities" and that he was comfortable pursing a plea without an agreement.  The court then asked Mr. Wallace whether he had heard Mr. Dellett's report to the court and whether Mr. Dellett had accurately reported to the court concerning his advice to Mr. Wallace about his various options going forward.  Mr. Wallace confirmed to the court that he had heard Mr. Dellett's report; that the report was accurate; and that he had had sufficient time to consider his options.  Mr. Wallace also confirmed to the court that it was his desire to plead guilty without the benefit of a formal plea agreement.

During the plea colloquy itself, Mr. Wallace's retained counsel Harold Rosenthal further explained that the decision to forego a plea agreement was based in part on Mr. Wallace and Mr. Rosenthal's belief that they were "better off" pleading guilty without an agreement so that Mr. Wallace could effectively challenge the amount of cocaine base attributed to him for relevant conduct purposes.  The court then asked Mr. Wallace whether Mr. Rosenthal's explanation was consistent with his own understanding of the decision to proceed without a formal plea agreement and Mr. Wallace, under oath, affirmed that it was consistent with his understanding.

The record, then, does not support Mr. Wallace's contention that his counsel failed to secure a plea offer or failed to communicate a plea offer to him.  Indeed, the record contradicts that contention and reflects that the government was willing to provide a plea agreement to Mr. Wallace; that Mr. Wallace was aware of that option; and that Mr. Wallace knowingly rejected

6

this option to pursue another option. In the absence of evidence that a plea offer was extended but not conveyed to Mr. Wallace, Mr. Wallace has not shown that his counsel's performance was deficient and no evidentiary hearing is warranted. *See Arredondo v. United States*, 178 F.3d 778, 782 (10th Cir. 1999).

*Ground Three*

As his third ground for relief, Mr. Wallace asserts that his guilty plea was neither knowing nor voluntary because his counsel advised him (and he believed) that he was only pleading guilty to powder cocaine offenses as opposed to crack cocaine offenses and because his counsel failed to convince the court that Mr. Wallace and Mr. Grigsby shared only a buyer-seller relationship. *See United States v. Cornelius*, 696 F.3d 1307 (10th Cir. 2012) (existence of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy). The court rejects these arguments and concludes that no hearing is warranted.

According to Mr. Wallace, his counsel advised him that he was only pleading guilty to powder cocaine offenses and his plea petition clearly states that he is pleading guilty only to powder cocaine offenses. The record contradicts Mr. Wallace's assertion that he believed he was only pleading guilty to powder cocaine transactions and that his lawyer advised him that he was only pleading guilty to powder cocaine transactions. The first substantive paragraph of Mr. Wallace's plea petition states that he received a copy of the Superseding Indictment, that he read the Indictment and *discussed it with his lawyer*, and that he fully understood "every charge" made against him. Those charges, of course, include the conspiracy charged in Count I—a conspiracy to manufacture, to possess with intent to distribute, and to distribute 50 grams or

7

more of cocaine base and to possess with intent to distribute and to distribute five kilograms or more of cocaine. At the change of plea hearing, Mr. Wallace waived reading of the charges based on his belief that he was sufficiently familiar with those charges. While it is true that, in describing the specific acts committed by Mr. Wallace in connection with the charges made in the Superseding Indictment, the plea petition references only "cocaine" transactions, that portion of the plea petition does not set forth the charges to which the defendant is pleading guilty. Moreover, there is ample evidence in the record that Mr. Wallace engaged in crack cocaine transactions. Finally, even if Mr. Wallace believed he was only pleading guilty to powder cocaine offenses, he was advised (and his counsel acknowledged) during the change of plea hearing that crack cocaine amounts might be attributable to him for sentencing purposes as "relevant conduct" in the conspiracy despite his insistence that he personally did not engage in crack cocaine transactions.

The court also rejects Mr. Wallace's attempt to rely on the principle that "the existence of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy." *Cornelius*, 696 F.3d at 1317. As explained by the Circuit in *Cornelius*, the "buyer-seller principle only shields mere end-user consumers" rather than those "who intend to redistribute drugs for profit, thereby furthering the objective of the conspiracy." *Id*. at 1317-1318. The record contains ample evidence that Mr. Wallace sold drugs in an interdependent distribution scheme. Contrary to Mr. Wallace's assertion, the fact that Mr. Wallace may not have had direct dealings with anyone other than Mr. Grigsby does not prove that Mr. Wallace was not a member of the conspiracy. *See United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006) (government does not have to show that the defendant knew all the details or all the members of

8

a conspiracy; government needs only to demonstrate that the defendant shared a common purpose or design with his alleged coconspirators). Finally, Mr. Wallace's trial counsel made concerted efforts—both in objecting to the PSR and in cross-examining witnesses at the sentencing hearing—to advance the theory that Mr. Wallace was a low-level participant in the conspiracy. The fact that his counsel's arguments were unsuccessful does not render his counsel's performance constitutionally deficient. *United States v. Mullane*, 226 Fed. Appx. 810, 813 (10th Cir. 2007) (unsuccessful attempts by counsel to persuade court to impose lower sentence does not suggest performance deficient).

*Ground Four*

Mr. Wallace asserts that his appellate counsel's performance was constitutionally deficient because he failed to raise numerous issues on direct appeal, including challenging the 300-month sentence; the court's relevant conduct findings; the amount of drugs attributed by the court to Mr. Wallace; and the application of certain sentencing guidelines. The record reflects that Mr. Dellett, on Mr. Wallace's behalf, timely filed a notice of appeal and that the Tenth Circuit ultimately appointed appellate counsel for Mr. Wallace after trial counsel was permitted to withdraw in the face of ineffective assistance concerns that Mr. Wallace intended to pursue. Appointed appellate counsel filed an appeal in which he candidly explained to the Circuit that the issues now highlighted by Mr. Wallace (*e.g.*, relevant conduct, firearm enhancements, role during the offense) were inextricably intertwined with Mr. Wallace's concerns about his counsel's performance such that the issues should first be addressed at the trial court level in connection with habeas proceedings for further factual development. Mr. Wallace's appellate

9

counsel, on behalf of Mr. Wallace, then requested a dismissal of the direct appeal for purposes of developing a factual record during habeas proceedings so that the Circuit could properly address Mr. Wallace's claims at a future date.

Mr. Wallace has not shown that his appellate counsel's performance with respect to Mr. Wallace's direct appeal was deficient.  His counsel clearly considered the issues that Mr. Wallace might challenge—including the issues identified by Mr. Wallace here—and expressly preserved those issues by not raising them in the direct appeal but by permitting Mr. Wallace to flesh out the issues in habeas proceedings—proceedings which he can then challenge before the Circuit.  Indeed, because the issues identified by Mr. Wallace call into question his trial counsel's performance, if his appellate counsel had raised those issues on direct appeal, then Mr. Wallace would have been foreclosed from pursuing § 2255 review of those same issues.  *See United States v. Gordon*, 4 F.3d 1567, 1570 n.2 (10th Cir. 1993).  In any event, Mr. Wallace has not shown that any of the issues he believes should have been raised on direct appeal had merit. "Without pointing to a winning argument passed over by his attorney, [Mr. Wallace] cannot make a case for ineffective assistance on appeal." *United States v. Miller*, 464 Fed. Appx. 750, 752 (10th Cir. 2012) (citing *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006) (counsel has no duty to raise meritless issues on direct appeal)).

**Sentencing Errors**

The remaining three grounds asserted by Mr. Wallace in his § 2255 motion concern sentencing errors allegedly committed by the court as well as a request by Mr. Wallace for a

reduction in his sentence based on sentencing changes relating to crack cocaine offenses.  As will be explained, the court rejects each of the grounds for relief asserted by Mr. Wallace.

*Ground Five*

According to Mr. Wallace, he should benefit from a reduced sentence based on the Fair Sentencing Act of 2010 and Amendments 748 and 750.  The Fair Sentencing Act, which amends certain statutory minimum sentences, does not apply retroactively to defendants, like Mr. Wallace, sentenced before its August 3, 2010 effective date.  *United States v. Murphy*, 2012 WL 5359297, at *3 (10th Cir. Nov. 1. 2012).   The Fair Sentencing Act, then, affords Mr. Wallace no relief.  Amendment 748 increased the quantity of cocaine base necessary to trigger a particular offense level.  *See United States v. Price*, 2012 WL 2511203, at *3 (10th Cir. July 2, 2012). That amendment was a temporary emergency amendment that was repromulgated as Amendment 750.  *Id*.  Amendment 750 may be applied retroactively.  *Murphy*, 2012 WL 5359297, at * 3.  The court considers, then, whether Mr. Wallace is eligible for a reduction in his sentence in light of the modified guideline ranges for crack cocaine offenses under Amendment 750.

Federal courts, in general, lack jurisdiction to reduce a term of imprisonment once it has been imposed. *Freeman v. United States*, ___ U.S. ___, 131 S. Ct. 2685, 2690 (2011).  "A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization." *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997).    Under limited circumstances, modification of a sentence is possible under 18

U.S.C. § 3582(c).[2]  That provision states that "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" may be eligible for a reduction, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(2).

In one such statement, the Commission has specified that "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . [a]n amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range."  U.S.S.G. § 1B1.10(a)(2)(B).  To determine whether an amendment would have this effect, the policy statement explained,

> the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced. In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.

U.S.S.G. § 1B1.10(b).  This policy statement is binding on the federal courts. 18 U.S.C. § 3582(c)(2).

Applying this policy statement in the present case, it is clear that Amendment 750 does not lower Mr. Wallace's applicable guideline range.  The amended PSR assigned Mr. Wallace a base offense level of 32 after converting the attributable cocaine and cocaine base to their marijuana equivalency.  Specifically, the PSR attributed 1008.97 grams of cocaine and 442.86

---

[2] Although Mr. Wallace seeks a modified sentence through a § 2255 motion, the court—in the absence of an objection from the government and discerning no prejudice to Mr. Wallace—construes this portion of his motion as a motion under § 3582(c).

grams of cocaine base to Mr. Wallace.  Utilizing Application Note 10 to the Drug Equivalency Tables provided at U.S.S.G. § 2D1.1, the total marijuana equivalency was 9,058 kilograms, resulting in a base offense level of 32 after applying the two-level reduction provided for in subdivision (D) of Application Note 10.  U.S.S.G. § 2D1.1(c)(4) (Nov. 1, 2008).  The court adopted these findings at the sentencing hearing.  Applying the Drug Equivalency Table as modified by Amendment 750 to the amounts attributable to Mr. Wallace, the resulting total marijuana equivalency is 1783.24 kilograms which, in turn, results in a base offense level of 32 under U.S.S.G. § 2D1.1(c)(4).  Because 32 was Mr. Wallace's base offense level at sentencing under the 2008 Guidelines, applying Amendment 750 does not result in a lower base offense level.  Stated another way, when the court recalculates Mr. Wallace's base offense level under the amended drug quantity tables, the base offense level is the same as the base offense level calculated at the time of Mr. Wallace's sentencing.  Because Amendment 750 has no effect on Mr. Wallace's base offense level, the court lacks authority to reduce Mr. Wallace's sentence. *See United States v. Broadwater*, 471 Fed. Appx. 534, 535 (7th Cir. July 20, 2012) (Because defendant's base offense level had already been lowered to 32 by Amendment 706, it could not be further reduced by Amendment 750, which assigns the same base offense level of 32 to defendants like Broadwater who are responsible for between 280 and 840 grams of crack cocaine).

*Ground Six*

Mr. Wallace next asserts that the court erroneously imposed two additional criminal history points under U.S.S.G. § 4A1.1(e) (based on Mr. Wallace's commission of the instant

offense less than two years after release from imprisonment on a qualifying sentence) without considering Amendment 742,[3] which eliminated recency points under § 4A1.1.   This argument is rejected because the court has no authority to reduce Mr. Wallace's sentence pursuant to this amendment.   Amendment 742 to the sentencing guidelines took effect in November 2010—after Mr. Wallace's sentencing.   *See United States v. Randall*, 666 F.3d 1238, 1239 (10th Cir. 2011). A guideline amendment is applied retroactively only when it is has been specifically listed among the retroactive amendments identified in U.S.S.G. § 1B1.10(c), and Amendment 742 is not listed in § 1B1.10(c).   *See United States v. Gutierrez*, 440 Fed. Appx. 673, 675 (10th Cir. Nov. 3, 2011) ("Because Amendment 742 is not included in the list of retroactive Amendments, the district court had no authority to modify the sentence.")

*Ground Seven*

Finally, Mr. Wallace asserts that his sentence of 240 months' imprisonment on Count 13 is illegal because it falls far outside the guidelines range of 77-97 months (as calculated by Mr. Wallace and premised on a base offense level of 22).   This argument is rejected as it fails to account for the fact that Counts 1 and 13 were grouped together pursuant to U.S.S.G. § 3D1.2(d) and the conspiracy count was used to determine Mr. Wallace's offense level.   *See* U.S.S.G. § 3D1.3(b) (directing the application of the "offense guidelines that produces the highest offense level" in the case of counts grouped together under § 3D1.2(d)).

---

[3] In fact, the court imposed only one additional criminal history point, rather than two, because Mr. Wallace had already received a two-point increase under § 4A1.1(d) for committing the offense while on parole. *See* PSR ¶¶ 212-213 (February 1, 2010).

14

In connection with his "illegal" sentence argument, Mr. Wallace also challenges the court's application of a 3-level increase based on Mr. Wallace's "manager or supervisor" role in the conspiracy under U.S.S.G. § 3B1.1(b).  According to Mr. Wallace, the record reflects that Mr. Wallace was involved with only 2 members of the conspiracy while the guideline requires a finding that Mr. Wallace be involved with 5 or more participants.  The court rejects this argument and concludes again that the 3-level enhancement was appropriate under the facts of this case.  To begin, the guideline does not require that Mr. Wallace be involved with at least 5 participants; it requires that the criminal activity involve more than 5 participants.  The conspiracy here involved at a minimum the 24 defendants named in the Superseding Indictment.  With regard to Mr. Wallace's specific role in the offense, the court easily concluded that he acted as a manager or supervisor after hearing the testimony of both Lakela Houff and Henry Grigsby at the sentencing hearing—testimony that the court deemed credible.  As explained by Ms. Houff, Mr. Wallace directed her to purchase plane tickets to and from California for him in a false name to avoid capture; directed her to pass various instructions on to her brother; and recruited a girl in California to deliver drugs from California to Kansas City by bus.  As explained by Mr. Grigsby, Mr. Wallace directed him concerning the sale of drugs in Kansas City and the return of drug proceeds to California.  Indeed, the evidence presented at the sentencing hearing reflects that Mr. Grigsby served as Mr. Wallace's agent in the Kansas City/Leavenworth area.   In short, the court rejects Mr. Wallace's challenge to this enhancement.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Wallace's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (doc. 1460) and Mr. Wallace's

motion for evidentiary hearing and oral argument (doc. 1504) is denied.  Mr. Wallace's motion for miscellaneous relief (doc. 1505) is granted in part and denied in part; it is granted to the extent that Mr. Wallace desires the court to consider his second supplemental pleading, which the court has done, but the court denies the relief requested in the second supplemental pleading.

**IT IS SO ORDERED.**

Dated this 6th day of December, 2012, at Kansas City, Kansas.

<u>s/ John W. Lungstrum</u>
John W. Lungstrum
United States District Judge

16