## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**United States of America,**

       **Plaintiff,**

**v.**                                                  **Case No. 07-20168-13-JWL**

**Harold Wallace,**

       **Defendant.**

### MEMORANDUM & ORDER

In April 2009, Harold Wallace entered a plea of guilty to one count of conspiracy to possess with intent to distribute cocaine and cocaine base and one count of attempted possession with intent to distribute cocaine. Mr. Wallace's amended presentence investigation report calculated a base offense level of 32 under U.S.S.G. § 2D1.1;[1] a two-level firearm enhancement; a three-level enhancement based on Mr. Wallace's role in the offense; and a two-level reduction for his acceptance of responsibility. The court, then, ultimately determined that Mr. Wallace's total offense level was 35 and assigned a criminal history category of V. The resulting advisory guideline range for imprisonment was 262 to 327 months. The court sentenced Mr. Wallace to a sentence of 300 months.

---

[1] At Mr. Wallace's sentencing hearing, the court attributed 13,190.63 kilograms of marijuana equivalent to Mr. Wallace, yielding a base offense level of 36 under the guidelines at that time. The court adjusted that level by subtracting two levels in accordance with Application Note 10(D) of U.S.S.G. § 2D1.1, bringing the offense level to 34. But because the presentence report attributed quantities to Mr. Wallace consistent with a base offense level of 32, and the government did not object to that calculation, the court capped the base offense level at 32 despite the fact that the evidence at the sentencing hearing established drug quantities sufficient to meet a higher base offense level.

In November 2015, Mr. Wallace moved for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782. Over the government's objection, the court found that Mr. Wallace was eligible for a reduction. After converting the drug quantities attributable to Mr. Wallace under the amended drug equivalency tables, Mr. Wallace's total offense level became 33. With a criminal history category of V, his amended guideline range became 210 months to 262 months imprisonment. The court also concluded that a reduction was warranted. Rejecting the government's argument that a reduction was unwarranted in light of Mr. Wallace's disciplinary record while in custody, the court, consistent with its practice, resentenced Mr. Wallace to the same point within the amended range as it did in connection with Mr. Wallace's original sentence. Mr. Wallace, then, was resentenced to 240 months imprisonment. He is currently scheduled for release on March 2, 2026.

This matter is now before the court on Mr. Wallace's motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A) and under § 404(b) of the First Step Act (doc. 2034). The court begins with Mr. Wallace's motion under § 3582(c)(1)(A). The Tenth Circuit has endorsed a three-step test for district courts to utilize in connection with motions filed under § 3582(c)(1)(A). *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021) (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)). Under that test, a court may reduce a sentence if the defendant administratively exhausts his or her claim and three other requirements are met: (1) "extraordinary and compelling" reasons warrant a reduction; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the reduction is consistent with any applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* A court may deny compassionate-release motions when any of the three prerequisites is lacking and need not address the others. *Id.*

2

at 1043. But when a district court grants a motion for compassionate release, it must address all three steps. *Id.* As will be explained, defendant has not come forward with extraordinary and compelling reasons sufficient to warrant a reduction in his sentence. The court, then, declines to address the other prerequisites.[2]

In support of his motion, Mr. Wallace asserts that, had he been sentenced at the time of his motion, he would have had a lower criminal history score. Specifically, Mr. Wallace was assessed a one-point "recency enhancement" under U.S.S.G. § 4A1.1(e) because the offense of conviction was committed less than two years after he was released from state custody on another charge. This additional point moved Mr. Wallace from a criminal history category of IV to a criminal history category of V. The recency enhancement has since been eliminated pursuant to Amendment 742 but that amendment was not made retroactive. Without the enhancement, Mr. Wallace's guidelines range would be 188 to 235 months. Mr. Wallace contends that his "inflated" criminal history score constitutes an extraordinary and compelling reason to reduce his sentence. The court disagrees.

To begin, while the court is authorized to grant relief based on a non-retroactive change to the Sentencing Guidelines, that change alone cannot support a sentence reduction. *See United States v. McGee*, 992 F.3d 1035, 1047 (10th Cir. 2021); *United States v. Arriola-Perez*, 2022 WL 2388418, at *3 (10th Cir. July 1, 2022) (district court had authority to consider Amendment 742 on compassionate release motion but only in connection with other extraordinary and compelling

---

[2] The government has not challenged Mr. Wallace's evidence that he has exhausted his administrative remedies. Any argument about exhaustion, then, has been waived. *See United States v. Hemmelgarn*, 15 F.4th 1027, 1030-31 (10th Cir. 2021).

3

circumstances presented).   While Mr. Wallace discusses his rehabilitation in connection with the § 3553(a) factors, he does not direct the court to any other extraordinary and compelling reason to reduce his sentence.  For this reason alone, the motion must be denied.

But even considering Mr. Wallace's argument about the recency enhancement and his rehabilitation, the court would deny the motion.  Contrary to Mr. Wallace's characterization of his criminal history score, that criminal history score is not inflated.  Mr. Wallace's criminal history is significant both in terms of the nature and number of offenses committed, including prior adult convictions for shooting at an inhabited vehicle or building (an incident that resulted in a murder charge that was later dismissed); felon-in-possession (notably, this conviction was obtained after a mistrial on murder charges with enhancements for participation in a street gang); and reckless driving.  He was on state parole at the time of his federal offense.  In fact, his criminal history reflects a clear pattern of recidivism and is replete with revocations of parole and violations of probation.  Moreover, as the government highlights in its response, Mr. Wallace's criminal history score does not reflect more than a dozen arrests or convictions that did not result in the assessment of criminal history points because they were either too old or the disposition could not be found.  A criminal history score of V is entirely appropriate in this case and an accurate reflection of Mr. Wallace's lengthy and violent criminal history.

The court further concludes that Mr. Wallace's rehabilitation does not support a sentence reduction.  Mr. Wallace has earned his GED; works as an orderly; and has participated in a wide variety of prison programming.  Significantly, he has also completed drug treatment despite being ineligible for early release.   The court commends Mr. Wallace's efforts to rehabilitate himself during his term of imprisonment—particularly by obtaining his GED and completing drug

4

treatment. The court hopes that Mr. Wallace will continue to take advantage of the rehabilitative opportunities afforded to him. Nonetheless, the court cannot conclude that the record here establishes extraordinary and compelling circumstances for purposes of early release. The sheer number of hours that Mr. Wallace has spent in programming is not surprising given the length of time that he has spent in prison. Moreover, Congress does not consider rehabilitation alone to be an extraordinary and compelling reason for purposes of compassionate release. *See* 28 U.S.C. § 994(t). And, as explained above, Mr. Wallace has not come forward with any other extraordinary and compelling reason, unique to him, that might justify early release. The court, then, rejects this argument as a basis for a sentence reduction. *See United States v. Mora*, 2021 WL 5711087, at *2 (10th Cir. Dec. 2, 2021) (no flaw in district court's denial of early release despite rehabilitative efforts where defendant had garnered extensive coursework and involvement in rehabilitative programs largely because he had spent so many years in prison.); *United States v. Rodriguez*, 837 Fed. Appx. 652, 653 (10th Cir. 2021) (same).

The court turns, then, to Mr. Wallace's motion for a sentence reduction under § 404(b) of the First Step Act.[3] Here, Mr. Wallace asks the court to exercise its discretion and give Mr. Wallace the benefit of the Department of Justice's current policy supporting the Eliminating a Quantifiably Unjust Application of the Law ("EQUAL") Act, Senate Bill 79, which would eliminate the distinction between cocaine and crack cocaine for sentencing purposes under 21 U.S.C. § 841(b)(1)(A) and (B). Eliminating the sentencing disparity between crack and powder

---

[3] The parties agree that Mr. Wallace is eligible for First Step Act relief and that the court is not required to reduce Mr. Wallace's sentence. Mr. Wallace argues that a discretionary reduction is warranted while the government argues that no further reduction is warranted in light of the relief that Mr. Wallace received under Amendment 782.

cocaine and utilizing a 1:1 ratio for crack and power cocaine (rather than the 18:1 sentencing ratio utilized in the Guidelines) would result in a time-served sentence for Mr. Wallace.

As acknowledged by Mr. Wallace, the court addressed the crack/powder disparity at Mr. Wallace's initial sentencing. At that time, the court declined to vary below the Guidelines based on the crack/powder sentencing disparity. As the court explained:

> I believe that the proper course is to permit Congress to work its will, whatever it may be, whether it goes to one to one, whether it goes to 20 to one, or whatever they may do; and then if it's retroactive, which I believe it will be, . . . [t]hen we can revisit it, as I did in all the cases that were affected by the last amendment. The reason I think it's more appropriate to do that is that I don't feel in a position myself to substitute my own view about how crack and powder should be handled versus the Commission or Congress or come up with either an arbitrary ratio of my own or to say, well, I think it should be one to one.

After discussing certain justifications for maintaining some disparity in sentencing for crack and powder cocaine, such as ease of marketing and ease of use, the court summarized its holding as follows:

> [M]y point is [that] this is a complicated formula, and I don't believe judges should be legislators; I think judges should be judges and judges should apply the law. If and when the law changes, this judge is prepared to do so, but I'm not prepared to legislate a new version of what the crack guidelines should look like, and I think that in the event that Congress should make no changes, which I think is unlikely, especially in light of this activity in the Senate, but if they should make no changes, that would leave unwarranted sentencing disparity where judges go about making departures or variances in anticipation of Congress doing something and then Congress never does.

Of course, after Mr. Wallace's sentencing, the law was changed to reflect a lesser disparity between crack and powder cocaine and Mr. Wallace received the benefit of that change in November 2015. Despite the court's explanation at Mr. Wallace's sentencing, he now asks the court to apply the 1:1 ratio based on what he hopes will be the government's agreement on that

issue.  But while the government acknowledges that the DOJ supports the EQUAL Act, there is no suggestion in the government's response that the DOJ 's support for that bill extends to a policy to agree that all defendants who were convicted of crack cocaine offenses should be resentenced consistent with the EQUAL Act.  Rather, it appears that the DOJ is assessing that issue on a case-by-case basis.  For example, in another case before this court, the government agreed to the application of the 1:1 ratio (and the resulting sentence reduction) in light of the particular circumstances of that case and that defendant.  But in Mr. Wallace's case, the government has exercised its prerogative and has objected to a reduction that wholly eliminates the sentencing disparity.  In the absence of the government's agreement, then, although recognizing its discretion to grant relief, the court reiterates its belief that the crack/powder disparity is an issue for Congress to resolve.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Wallace's motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A) and under § 404(b) of the First Step Act (doc. 2034) is denied.

**IT IS SO ORDERED.**

Dated this 16th day of August, 2022, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

7